FENNELL et al. v. TRINITY PORTLAND CEMENT CO. (No. 2078.)

(Court of Civil Appeals of Texas. Texarkana. March 5, 1919. Rehearing Denied March 20, 1919.)

1. CORPORATIONS ⬦═⮞672(4)—FOREIGN CORPORATIONS—ACTION—COMPLIANCE WITH STATUTE—PLEADING.

In action by foreign corporation, where complaint does not show transaction constituting basis of action to be an intrastate transaction, it is unnecessary to plead and prove compliance with Rev. St. 1911, art. 1318, re-

quiring foreign corporation to secure permit to do business in state.

2. MUNICIPAL CORPORATIONS ⬦═⮞348—PAVING CONTRACT — BOND — ACTION BY MATERIALMAN—PLEADING.

Materialman, suing principal paving contractor and surety on his bond for materials furnished subcontractor, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394g, requiring contractor obtaining public contract to give bond, and providing that materialman may intervene in cities' action on bond, or, if no such action is brought within six months, may bring separate action thereon, was not required to plead and prove that no suit had been instituted by the city within the preceding six months.

3. MUNICIPAL CORPORATIONS ⬦═⮞348 — IMPROVEMENTS—CONTRACTOR'S BOND—ACTION BY CITY.

State or city for whom work is being constructed by contractor, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394g, requiring a contractor to give bond, is not required to bring suit on such bond, except when there has been a breach of some of the conditions in which the state or municipality is interested.

4. MUNICIPAL CORPORATIONS ⬦═⮞348—PAVING CONTRACT—ACTION BY MATERIALMAN—PLEA IN ABATEMENT.

In materialman's action on paving contractor's bond required under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, giving materialmen right to intervene in city's action on bond or bring action in its own name if no action is instituted by city within six months, the defense that materialman's action was prematurely brought should be raised by plea in abatement.

5. MUNICIPAL CORPORATIONS ⬦═⮞348—PAVING CONTRACT—ACTION BY MATERIALMAN—CONTRACTOR'S BOND.

Where paving contractor gives bond as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f, 6394g, to secure payment of all indebtedness incurred incident to the performance of the contract, materialman's right of action against the contractor was given him by the bond, and was not dependent upon the statute.

6. MUNICIPAL CORPORATIONS ⬦═⮞347(2)—PAVING CONTRACT—CONTRACTOR'S BOND—CONSTRUCTION.

Paving contractor's bond, given to secure performance of contract and "payment of all indebtedness incurred incident thereto for labor and material," and giving materialmen furnishing "materials used in the construction of such work * * * right of action thereunder," held to give materialman furnishing materials to subcontractor a right of action thereon.

7. STATUTES ⬦═⮞226 — CONSTRUCTION—LEGISLATIVE INTENT.

Where Legislature enacts a law similar in all material respects to a federal law, it will be presumed that the construction given the federal statute by the federal courts was adopted by the Legislature.

---

8. MUNICIPAL CORPORATIONS ⬤⇒347(1)—PAV-
ING CONTRACT — CONTRACTOR'S BOND —
RIGHTS OF MATERIALMAN.

Where paving contractor executed bond to
secure payment for all labor and material used,
materialman was entitled to sue thereon for
materials furnished subcontractor, though prin-
cipal contractor had no notice of the purchase
of such materials.

Appeal from District Court, Grayson Coun-
ty; C. T. Freeman, Judge.

Action by the Trinity Portland Cement
Company against J. H. Fennell and others.
Judgment for plaintiff, and defendants ap-
peal. Affirmed.

Head, Dillard, Smith, Maxey & Head, of
Sherman, for appellants.

Thompson, Knight, Baker & Harris and
Alex F. Weisberg, all of Dallas, for appellee.

HODGES, J. In August, 1913, the city of
Denison entered into a contract with the
Murphy-Moulton Company to pave a portion
of Gandy street in that city. Among other
provisions, the contract contained the follow-
ing:

"Said contractor shall furnish a bond, to be
approved by the city, in the sum of twenty
thousand dollars, guaranteeing that said con-
tractor will faithfully perform the undertak-
ings of this contract, and which bond shall also
provide that said contractor shall pay for all
labor and materials used in the construction
of said work; and that any person so furnish-
ing such labor or materials may have their
right of action thereunder as if the same were
made payable to such laborers or materialmen
direct."

In compliance with the above requirement
the Murphy-Moulton Company executed and
delivered to the city a bond in the sum of
$20,000, conditioned for the faithful perform-
ance of the service undertaken, with the
appellant Southwestern Surety Insurance
Company as its surety. That bond contained,
among others, the following stipulation:

"This bond is given to secure the perform-
ance of said contract in every particular, in-
cluding payment of all indebtedness incurred
incident thereto for labor and material; and
persons employed upon or about said work, or
supplying or furnishing material therefor, may
have their cause of action therefor as though
said bond were payable directly to them."

In May, 1914, the Murphy-Moulton Com-
pany entered into a contract with J. H.
Fennell, by the terms of which a portion of
the concrete work undertaken by it was sub-
let to Fennell at an agreed price. Between
June 10 and November 12 of 1914 Fennell
purchased from the appellee 3,000 barrels of
cement at an aggregate cost of $5,370, for use
in the work on Gandy street, under his con-
tract with Murphy-Moulton Company. All
of this cement was used in the street im-

provement except about 40 barrels, and all of
the purchase price was paid except $1,833.08.
On January 8, 1915, the balance due from
Fennell being unpaid, the appellee gave writ-
ten notice of its claim to the mayor and com-
missioners of the city of Denison, and later
gave similar notice to the Murphy-Moulton
Company and to the appellant surety com-
pany. On December 7, 1914, Fennell gave to
the appellee an order upon the Murphy-
Moulton Company for the sum of $85.92,
which was paid and his account credited with
that amount. On the same date the appellee
took from Fennell two notes covering the bal-
ance of his indebtedness, which were secured
by a chattel mortgage on some personal prop-
erty. This was done, according to the find-
ings of the court, without any intention on
the part of the appellee to waive its rights
under the bond of the Murphy-Moulton Com-
pany. The failure of Fennell to pay those
notes at maturity was followed by this suit
instituted by the appellee against Fennell, in
which are joined the Murphy-Moulton Com-
pany and the Southwestern Surety Insurance
Company, upon the bond above referred to.
In a trial before the court a judgment was
rendered in favor of the appellee against
Fennell for the full amount of the debt, and
against the other defendants for the same
amount, less the value of the 40 barrels of
cement not used in the street improvement
work. The Murphy-Moulton Company and
the Southwestern Surety Insurance Company
have appealed.

The record shows that in the trial below the
following agreement was made by the at-
torneys:

"The Trinity Portland Cement Company is
the same identical corporation as the South-
western States Portland Cement Company, the
name of the company having been changed from
Southwestern States Portland Cement Com-
pany to Trinity Portland Cement Company by
amendment of its charter. That the corpora-
tion is one organized under the laws of the
state of West Virginia and has a permit to
do business in the state of Texas, its principal
office and place of business being at Dallas,
Dallas county, Texas."

[1] Counsel for appellants insist that this
agreement, being all the evidence upon that
subject, was insufficient to support a finding
that the appellee had complied with the re-
quirements of article 1318 of the Revised
Civil Statutes, which prescribes the condi-
tions upon which a foreign corporation may
maintain a suit in the court of this state.
They say the effect of this agreement is
merely to prove that at the date of the trial
in the court below the appellee had a permit
to do business in this state; that this is no
proof that the appellee had such permit at
the date of the transaction upon which its
cause of action depends. Assuming that the
court was not authorized to infer from this

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

agreement that the appellee had the required permit at the time it sold the cement to Fennell in 1914, there is nothing in the averments of the appellee's amended original petition which shows an intrastate transaction. While it is alleged that at the time of the filing of this suit the appellee had its principal office in Dallas county, Tex., there is nothing stated as to its domicile or place of business in 1914, or as to where or under what circumstances the cement was sold to Fennell. The averments of the petition are entirely consistent with an interstate transaction; and in such cases the rule which requires the foreign corporation to plead and prove a permit to do business in Texas has no application. Panhandle Tel. & Tel. Co. v. Kellogg S. & S. Co., 62 Tex. Civ. App. 402, 132 S. W. 963; Blackwell-Weilandy Book & Sta. Co. v. Perry, 174 S. W. 935; Crews & Williams v. Gullett Gin Co., 189 S. W. 793.

If it should be held that because the appellee alleged that its principal office was at Dallas, Tex., on the date the suit was filed it should be inferred that it was doing business in this state at the time the transaction with Fennell occurred, it is equally as reasonable to infer from the facts agreed to that it was also at that time equipped with a permit to do business in this state. If we must presume that location at that time was but a continuation of what it had previously been, we should, with equal propriety, presume that its equipment was the same.

At its regular session in 1913 the Legislature (Acts 33d Leg. p. 185) enacted a statute which required parties entering into formal contracts with the state and its various municipalities for the prosecution of any public work to execute the usual penal bond, with good and sufficient surety—

"with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the state or municipality."

The above is a part of section 1 of the act, which will be found as chapter 3 of title 113 of Vernon's Sayles' Statutes (section 6394f). Section 2 of that act provided that if no suit shall be brought by the state within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor

and furnishing affidavit that they have supplied labor and materials for the prosecution of the work for which payment has not been made, such persons shall be furnished with a certified copy of the contract and bond upon which they shall have a right to institute and prosecute a suit for their own benefit.

[2-5] The appellants contend that it devolved upon the appellee, under the terms of this statute, to plead and prove that no suit had been instituted on this bond by the city of Denison within six months after the completion of the work on Gandy street. Conceding that the right of the appellee to maintain a suit on this bond depends solely upon statutory authority, appellants' conclusion is untenable. The state or municipality is not required or expected to bring suit on a bond of this character, except when there has been a breach of some of the conditions in which the state or municipality is interested. But when either does file a suit to enforce its rights other parties are permitted to intervene and set up their rights, however disconnected the latter may be with those in which the state or municipality is concerned. If the state or municipality has no grievance, or elects not to file a suit to enforce its demands within six months after the completion of the work, then any party who has furnished labor or materials has the right to sue in his or their own names, without reference to any action upon the part of the state or municipality. The record shows that this suit was filed more than six months after the work was completed. The affidavit provided for is merely a means of securing an authenticated copy of the contract and bond, to be used as a basis of the suit by private parties. If a suit of this character is prematurely brought, that is a matter of defense which should be raised by plea in abatement. There is no such plea in this record. But the right of the appellee to maintain a suit on this bond is given by the terms of the bond itself, and is not dependent upon the statute. Texas Glass & Paint Co. v. Crowdus et al., 108 Tex. 346, 193 S. W. 1072.

Appellants also insist that they were released from liability on the bond by the taking of notes from Fennell and extending the time for the payment of his debt. In support of this proposition they invoke the well-established rule applied to contracts evidenced by promissory notes and similar instruments. It is not contended that any injury resulted to the appellant by reason of the taking of those notes or the extension of time given. In the United States Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, a similar objection was considered at length and overruled by the federal Supreme Court. The subject is so fully discussed in that opinion that it is unnecessary to add more.

[6-8] Another defense urged is that the ap-

pellants were not liable for the material furnished by the appellee for Fennell, a subcontractor; that the extent of their liability under the terms of their bond was limited to labor and materials furnished to the original contractor. The terms of the bond are not to be limited by a construction so narrow. The language used is broad, and is sufficiently comprehensive to include all parties who furnish material that was used in the work which the Murphy-Moulton Company as the original contractor bound itself to perform. The federal statute, which is in all material respects the same as ours, has been construed by the Supreme Court of the United States to include within the protection of the bond those who furnish material to subcontractors. Mankin v. U. S., 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315. In adopting the provisions of the federal statute we must assume that our Legislature also adopted the construction which the federal courts had placed upon that statute. It was not essential, in order to fix the liability of the Murphy-Moulton Company and the surety on its bond, that it should have notice that Fennell was purchasing material from the appellee. If by the terms of their bond they agreed to protect such dealers, it was their duty to see that contracts for the payment of material were performed.

The judgment of the district court will be affirmed.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes